# Semans *v.* United Lumber Co.

*Receivers—Continuance of business—Management—Operating railroad at loss — Compensation — Exceptions — Corporation — Laches—Estoppel—Auditor's findings of fact.*

1. Where receivers of a corporation have been directed to continue the business, and the receivership has not been a success financially, creditors objecting to the receiver's account and asking a surcharge, must show that there was some mismanagement, negligence, or misconduct on the part of the receivers in the administration of the trust.

2. In such case creditors cannot stand idly by for four years before an account is filed, without making some investigation of the company's business, and then demand relief in the form of surcharges.

3. Where a corporation is assumed to be solvent at a time receivers for it are appointed, but it is in fact insolvent, receivers cannot be surcharged because no profits were made, in the absence of proof of negligence or fraud.

4. Negligence or fraud of the receivers must appear from affirmative evidence or circumstances permitting such inference, and both should be directed to specific payments or losses.

5. Where an auditor has found from sufficient and competent evidence that receivers have not been guilty of negligence or fraud. and there is no obvious mistake, his findings should be sustained.

6. While courts will scrutinize with great care the conduct of receivers of a corporation appointed by them, who are at the same time interested in another company with which the delinquent company deals, the mere fact that a relationship exists, does not ordinarily condemn their acts, particularly those done in good faith.

7. In such case, to justify a surcharge, it must appear that the cestuis que trust suffered some pecuniary loss, traceable to a conflict of interests.

8. A receiver whose time is employed and paid for from the trust estate should not have compensation from an agency for the same time.

9. While an opportunity may have been presented to a receiver to practice dishonesty, he will not be surcharged merely because of the existence of such opportunity, without evidence of wrongdoing.

10. Where receivers appointed to continue a business file two successive accounts, and both accounts are before the court, and no distribution has been made pending exceptions, and it appears that the receivers were bound to continue the business during the litigation, and that all the moneys appeared for settlement in the second account, it is error to surcharge the first account with the balance shown by it.

11. The filing of exceptions to a receiver's account, without specifying wherein the account or particular claims are wrong, is an incorrect way of attacking an account.

12. The mere continuance of a business by a receiver for a long period does not justify a finding of fraud or negligence.

13. In such case, to justify a surcharge, there should be evidence that the business could have been wound up sooner, and what the costs would have been, considering everything affecting it.

14. Receivers cannot be surcharged merely because a railroad, which was a common carrier, was operated by them at a loss.

15. A receiver's account should be audited on the basis of items properly vouched and unassailed.

Argued September 29, 1924. Appeals, Nos. 135-140, Oct. T., 1924, by T. B. Palmer, receiver, and Executors of W. E. Crow, from order of C. P. Somerset Co., Equity Docket, 1915, No. 3, surcharging receivers in case of I. W. Semans v. United Lumber Company. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Exceptions to adjudication of receivers' account. Before Berkey, P. J.

The opinion of the Supreme Court states the facts.

Exceptions overruled. Receiver appealed.

*Error assigned* was, inter alia, order, quoting it.

*George D. Howell,* and *H. E. Hackney,* of *Shelby, Henderson & Hackney,* for appellants, cited: Moore's Est., 228 Pa. 516; Leslie's App., 63 Pa. 355; Robin's Est., 180 Pa. 630; Galloway's Est., 5 Pa. Superior Ct. 272; Hilliard v. Sterlingworth, etc., Co., 236 Pa. 82; Miller's Case, 277 Pa. 336.

*C. W. Walker* and *Clarence L. Shaver,* with them *Uhl & Ealy, J. G. Ogle, Boose & Boose* and *Ernest O. Kooser,* for appellees, cited: Galloway's Est., 5 Pa. Superior Ct. 272.

OPINION BY MR. JUSTICE KEPHART, November 24, 1924:

Palmer & Semans Lumber Company owned all the capital stock of the United Lumber Company, and the latter concern owned the United Railway and other allied companies. In January, 1915, receivers were appointed for the United Lumber Company, and subsequently for its allied concerns. A statement of assets was filed, showing property apparently worth some $750,000. To the first account of September, 1919, an auditor was appointed to pass on the exceptions of creditors thereto. His interlocutory report in 1921 made a ten per cent partial distribution to creditors of the cash balance ($57,769.91) found in the first account. In subsequent hearings much testimony was taken, a report was submitted July, 1923, to which creditors excepted; these were dismissed by the auditor. Later they were renewed in court.

While this account was pending one of the receivers died; the surviving receiver was removed, and ordered to file a second account, the first account not being finally adjudicated. The second account of September, 1923, was excepted to by creditors, and thereafter what is called a reaudit of both accounts was directed to be made by Cover, one of the newly appointed receivers. The court then heard the exceptions to both accounts, additional testimony was taken, and a formal decree was entered disposing of all matters, the net result of which was to surcharge the first appointed receivers or their estates with the sum of approximately $53,000. Appeals by the latter are here from that adjudication. This is a very brief and by no means complete statement of the procedure invoked in these proceedings.

In the decree appointing the receivers, they were directed to continue the business in the usual way until the further order of the court. Under this authority, the affairs of the concerns were conducted for a period of eight years.

In the final disposition of the accounts by the court below, omitting compensation to the receivers, the first account as stated by the auditor was found to be substantially correct. No evidence of any consequence challenges it, and we agree with the following conclusion found by the auditor: "The receivership was not a success financially, neither was the business [for some time] before the receivership, and it is not unusual for those who are financially interested in the estate to complain about mismanagement and even to believe the estate was mismanaged simply because results anticipated were not realized. It was incumbent upon the exceptants to [do] more than charge mismanagement and then demand of the receivers that they come into court and clear themselves. It must be shown by the objecting parties that there was some mismanagement, negligence or misconduct on the part of the receivers in the administration of their trust. The auditor is compelled to say that there was not the slightest evidence of any of these things, and some of the exceptions which raise these questions evidently were filed without due consideration or investigation."

The appellee states to us that in view of the encouraging condition set forth in the schedule of assets filed in the receivership, and the apparently busy operations conducted by the receivers, the creditors were lulled to rest and led to believe their claims would be paid in full,—that the company was wholly solvent and could be restored to its owners after a creditable showing. The facts present then, and as developed since, did not warrant such an assumption. Creditors cannot stand idly by for a period of four years before an account is filed without making some investigation of the com-

pany's business, and then demand relief in the form of surcharges. When that first account was filed, which was anything but favorable, they should have moved swiftly if the estate was "indifferently managed resulting in waste and loss"; instead, they waited four years after that before taking steps to oust the receiver.

But it is quite evident, from an examination of the schedule of property making up the assets and the facts before us, readily obtainable when the schedule was filed, that the values there given were excessive. For illustration, take the United Railway value ot $200,000, coal land and surface at $131,000; the creditors know quite well now what that value is and could have known years ago. It is rather anomalous to regard the estate as solvent and at the same time have receivers appointed because of its perilous financial condition. In disposing of the question before it, the court below evidently went on the theory that it was dealing with a solvent estate, and that, unless profits were produced, the receivers should be charged with liability.

The continuance of the business shows losses incurred by the receivers, and better results might have been obtained had all the property been sold immediately; but it is quite clear this was not the judgment either of the creditors or the owners when receivers were appointed.

While creditors, by delay in forcing settlement, may be guilty of overindulgence, this attitude toward the trust estate does not give the receivers a free rein to dissipate the property at will. Receivers are responsible not only for the property committed to their care, but for all items of expenditure; the former must be accounted for, and the latter properly vouched. They should be held to a degree of care reasonably consistent with business undertakings. In assuming the office, under circumstances such as existed here, they virtually certify to their capacity to act and should not be excused for lack of ordinary business ability. But these trust officers must not be made to suffer merely because

the business, continued for a long period of time, was
unprofitable, or for mistakes of reasonable judgment
in handling its affairs; they should, however, be sur-
charged for losses occurring through negligence or fraud
in the administration of the estate. Negligence or fraud
must appear from affirmative evidence or circumstances
permitting such inference, and both should be directed
to specific payments or losses. The court below applied
too severe a rule in determining the effect of a continu-
ance of the business. Generally speaking, the record
contains no evidence to support the court's findings, or
the allocation of credits used in the adjudication of the
second account; hence we must disapprove its action
exactly as we did under like circumstances in Tenth
National Bank of Philadelphia v. Smith Construction
Co., 242 Pa. 269.

Taking up the items for more specific consideration,
dwelt on by the court below, in the first account the court
surcharged the greater part of the compensation allowed
to the receivers. In addition to a monthly salary re-
ceived by one of them, credit was claimed for $20,000 as
commissions to both in handling $750,000. On this
question the auditor made the following finding: "There
is no evidence of mismanagement of the estate by the
receivers nor any lack of good faith and integrity in the
conduct of the business of the estate. The receivers
were diligent and conscientious......, the amounts
charged for their services and commissions were moder-
ate, in view of the services performed, time expended,
the responsibility resting upon them and the vast
amount of detail involved, and the very great amount of
litigation brought upon the receivers, which they de-
fended with success......It must be considered that the
receivership has continued over a period of eight years,
through no fault of the receivers." The evidence sup-
ports this conclusion, and as there is no evidence to
justify a finding to the contrary, the report of the audi-
tor should have been sustained: Rankin v. Rankin, 224

Pa. 514, 516. The surcharge must be set aside: Moore's Estate (No. 1), 228 Pa. 516, 522.

While there was no specific disallowance of brokers' commissions in the first account, yet special reference having been made to it, it should be noticed. We find that the record shows the United Lumber Company received the highest market price for sales made through this agency. The brokerage charge was a customary one, usual in disposing of large quantities of lumber. Palmer, one of the receivers, was a member of this agency, employing a large force of men, with many business connections to effect sales. While courts will scrutinize with great care the conduct of officers appointed by them, who are at the same time interested in another company with which the delinquent company deals, the mere fact that a relationship exists does not ordinarily condemn their acts, particularly those done in good faith. To reach such conclusions there should be some evidence, in addition to the connection, to stamp the transactions with unfairness. No great amount of evidence is necessary, but it should appear that the cestuis que trustent suffered some pecuniary loss, traceable to a conflict of interests. We have the testimony of disinterested persons, as well as of one of the newly appointed receivers, as to the fairness of the sales and reasonableness of the agent's charge; the commission paid the brokers must be sustained.

But a receiver whose time is employed by, and paid for from, the trust estate should not have compensation from the agency for the same time. Such sums should be credited to the trust property and accounted for personally by that receiver or his surety. While on this subject, we find nothing in the record to show this estate suffered through the organization and subsequent operations of the National Lumber Company. The railway, used to carry its product to market, was a common carrier, though its stock was owned by the United Lumber Company. It could have been compelled to haul freight

offered and to construct reasonable facilities to accomplish this purpose. There was not the slightest evidence to show any overreaching by the National Lumber Company, or, in fact, any of the subsidiary companies or individuals connected therewith. While an opportunity may have been present to practice dishonesty, that element is always present in fiduciary relations. The law demands that more than the existence of opportunity for overreaching be shown before it punishes.

After the auditor had, through the interlocutory report, distributed ten per cent of the cash balance shown by the first account, there remained $25,668.48, from which was properly deducted audit costs and preferred claims, leaving a balance of $23,923.88. This balance the auditor distributed to creditors, but, as exceptions had been filed to this account the receiver, to close his administration, carried the entire balance, including the ten per cent paid out, into the second account, claiming credit for all disbursements since the filing of the first account. The court below passed on both accounts at the same time. All the property of the trust estate was in custody of the law, and, though the auditor had reported a distribution, none in fact had been made, and could not be, pending exceptions. Moreover, during the continuance of the litigation, the trustee was bound to carry on the business, even if it was necessary to expend money accounted for and reported for distribution as above. All the moneys appeared for settlement in the second account. In this view, it was error to surcharge the first account with any part of the balance then shown.

Taking up the second account, the surviving receiver charged himself with a balance of $162,956. In this balance, as above stated, was the cash on hand shown by the first account, $57,769.91. Credits as follows must be deducted: $32,101.43, the ten per cent distribution made by the interlocutory report; cost of audit, etc.; and a loan of $20,000 included in both sides of the ac-

count; a total of $53,434.43. There is no dispute as to this item. The balance was accounted for through some eleven hundred items, all apparently properly vouched. The exceptions filed did not specify wherein the account or particular items were wrong, and we held this to be an incorrect way of attacking an account in Hilliard v. Sterlingworth Railway Supply Co., 236 Pa. 82, 85. The accountants were entitled to know what testimony to produce in support of the conduct of the estate. The burden was on those attacking the payments to show they were not made in good faith or were not bona fide claims, or made through fraud or neglect of duty. As we have stated, the mere continuance of the business for a long period does not justify a finding of fraud or negligence. There should be evidence to show it could have been wound up sooner, and what the costs would have been, considering everything affecting it. We do not wish to be understood as condoning any reprehensible act of the receivers, but there ought to be some evidence that such acts were committed before a conclusion to that effect is made. As the evidence is now presented, we find no reason to disallow the salaries, wages, etc., paid by the accountant. The salaries of the employees connected with the establishment, after the first account filed, may or may not have been proper charges. It depends on how, from the evidence that should have been submitted, one views the work to be done. Ordinarily, the hearing judge would think such charges excessive; yet, without evidence, he would not be able to say in what degree or in what particulars. There may have been good reason for the continued employment of these persons, sufficient to show that it was not the result of negligence or fraud. Therefore, to decline to honor the vouchers submitted, without evidence specifically attacking them, is error; there is no evidence, as the record now stands, from which the court could have found, as a fact, that they were not proper charges. In passing on these questions, attention is again called to the inaction

of creditors for four years after the first account, and the possible ground of belief in the receivers that the creditors concurred in their actions. This rests solely on the question of good faith. While courts are not compelled to accept unreasonable theories, or facts, we must confine our adjudications to the record; the vouchers as they now stand should not have been rejected.

As to the items having to do with the railroad, its operation, maintenance, upkeep and construction of additional facilities, we must remember it was compelled to function because it was a common carrier, acting under orders from the Interstate Commerce Commission, as well as the Public Service Commission; it must be kept suitable for public travel and carrying freight. That it was operated at a loss is not alone sufficient to affect the receivers; it is not an unusual thing for railroads to be operated at a loss. The cost for the items enumerated were proper charges and properly allowed.

The court below adopted its own system of credits, being a per cent, or so much per thousand, or commission allowance; while a correct theory in estimating cost, it is not controlling in this case, where undisputed facts are submitted showing costs. The system had no evidence to support it; and, if it had, it must go down before unchallenged payments. The account should have been audited on the basis of the items properly vouched and unassailed. The court below was in error in adjudicating the acount in the manner stated.

We have endeavored to indicate our views on the most salient features of the case. The surcharges are erroneous; the account must be restated as outlined in this opinion.

The decree is reversed, the account is remitted to the court below for restatement; costs to be paid by the estate.