## SPECIALTY PRODUCTS CO., Inc., v. UNIVERSAL INDUSTRIAL CORPORATION.

### No. 854.

District Court, M. D. Pennsylvania.

April 5, 1937.

O'Malley, Hill, Harris & Harris, of Scranton, Pa., for plaintiff.

Harvey H. Steckel, of Allentown, Pa., and Andrew Hourigan, of Wilkes-Barre, Pa., for Merkle Robbins Co.

Welles, Mumford, Stark & McGrath, of Scranton, Pa., for certain creditors.

KIRKPATRICK, District Judge.

This case involves exceptions to the account of the receivers of Universal Industrial Corporation, and is before the court upon the report of a special master appointed to pass upon exceptions to the account and to recommend compensation for receivers and attorneys.

An entire day was given to the argument before the court and comprehensive briefs have been filed. In addition the court has had the assistance of an exceptionally able report by the special master, which deals fully with every point at issue.

After a careful consideration of the briefs, the master's report, and so much of the voluminous testimony as appeared to be necessary, I have reached the conclusion that the master's disposition of the various

contested issues arising out of the account is correct. All the exceptions to the master's report relating to items of account and surcharge will therefore be dismissed. If the parties desire, they may present requests for findings and conclusions in accordance with the master's report as to those matters. Before leaving this phase of the matter, I think I ought to place upon the record my own independent conclusion that the charges of embezzlement and fraud on the part of the receivers in connection with the insurance refunds have not been sustained by the evidence, and that the receivership has been honestly conducted.

The master's recommendation as to receivers' compensation and attorneys' fees must be considered separately. As to them I cannot agree with the master, but think that the figures fixed by him are entirely too high. He recommends an allowance of $20,000 for Mr. Gritman, $15,000 for Mr. Acker, and a joint allowance of $20,000 to the two attorneys for the receivers.

The total fund available for creditors, using approximate figures here and throughout, is $105,000. It has already been diminished by withdrawals by the receivers against their compensation (not authorized by the court) amounting to $33,000, so that there is now on hand about $72,000. The total allowance of fees suggested will reduce this to about $52,000. In addition, appraiser's fees and the master's fee will have to be paid. The result will be that over 50 per cent. of the amount available to general creditors, whose total claims are in the neighborhood of $600,000, will go to expenses of the receivership. This is by no means an extraordinary situation, nor is it, of itself, any proof that the allowances recommended are excessive. It does, however, furnish a good reason why the court should pause and consider very carefully the basis for the recommendation.

The vital statistics of this receivership are as follows:

The company was engaged in the business of manufacturing silk. It had eight silk and rayon throwing plants located at eight different places in the Middle District of Pennsylvania. One of these plants consisted of four "units," another of two. Apparently this means that there were separate buildings at those places. At any rate, only three of the plants were operating.

The company had gone through a prior reorganization and, for some 9 or 10 months prior to the receivership, had been operated under the direction of a committee of creditors. Mr. Gritman, one of the receivers, had been employed by the creditors' committee to manage the business at a salary of $1,250 per month.

The receivership was not expected or intended to be of long duration. It was undertaken because the attitude of one of the larger creditors made voluntary reorganization impossible, and a judicial sale of assets seemed to be the only way out.

The receivers were appointed on September 11, 1931.

The book value of the assets which they took over was about $1,400,000, but that was an inflated figure. The company was really considerably less than a million dollar concern. Based principally on the court appraisal, the free assets amounted to about $885,000, and in addition there was mortgaged property securing a bond issue of about $320,000. The receivers operated, or partially operated, the business for 11½ months until the sale. Only two of the plants were operated throughout the whole period. Four of them were never operated at all, and the remaining two were operated a part of the time only, most of this part time operation being the last 2 or 3 weeks of the receivership.

During the period of operation the receivers took in $281,000 and paid out $353,000. The operating loss incurred during the receivership was $55,000. This, after making adjustments for write-off of asset values, is about the same as the loss incurred during the prereceivership period of creditor management. Of course, the whole thing occurred almost at the rock bottom period of the depression.

The scattered locations of the various plants probably cost something in time and trouble, but in general the management involved the kind of difficulties which every business during that period was struggling with, not any which could be called exceptional or unique.

No one should presume to criticize the efficiency and skill of those operating a business in such a time, except upon the plainest evidence. In my judgment the conduct of this receivership was honest, reasonably efficient, and only moderately disastrous.

I think that Mr. Gritman is entitled to compensation at about $1,250 a month.

The allowance to him will be $14,000. I probably would not allow him as much as that were it not for the fact that it appears rather clear that the creditors acquiesced in this rate of payment. I think that $7,000 is ample for Mr. Acker's services.

It has been noted that the receivers have already taken the sum of $33,000 on account of compensation. This was without order of court. I find that this fact is not sufficient to require a denial to them of all compensation or a penalty order of any kind. Having so found, it is unnecessary to discuss the propriety of their course or to deal with the many very difficult administrative problems which center about the payment of compensation to the receivers and others during a protracted receivership. Inasmuch as they greatly overestimated the real value of their services, however, a surcharge will be necessary.

What has been said in regard to the receivers' services may be used as a background in considering the attorneys' fees. Certain special matters may be noted:

First. In spite of the vigorous argument against the idea, I think that it is proper to observe some remote relation between the fees to be paid and the resources available to pay them. Of course, it will not be determinative, and unfortunately cases will arise where every cent of money on hand will have to be devoted to receivership expenses and still leave services uncompensated. But on the other hand I do not think that I am required to fix fees in total disregard of the fact that this receivership produced a very lean harvest, that all interests involved suffered heavily, and that the whole enterprise was definitely not a success.

Second. The fact that two attorneys were employed by the receivers does not mean that they should be allowed a fee twice as large as that which a single attorney would be entitled to. On the other hand the employment of two attorneys may properly call for a larger allowance than one, even though that one might have been able to get through the necessary work after a fashion.

Third. The legal problems of this receivership were of course peculiar to its own circumstances, but so are the legal problems which arise in every receivership. While the task of these attorneys presented some unusual situations, I cannot find that it was any more difficult than that of the attorney for a receiver in an average case. I do not mean that their work was merely routine. That would not be an average receivership by any means, although such things do occur. Additional counsel were employed in one or two matters.

Both attorneys are gentlemen of the highest standing and unquestioned integrity, and their claims are presented with the utmost sincerity and a thoroughly honest belief in their reasonableness. Unfortunately I cannot agree. I will allow the attorneys for the receivers a total of $12,000, or $6,000 apiece.

The master, in addition to the $1,000 already received by him, will be awarded the sum of $2,500. He has performed a very difficult task extremely well and has the thanks of the court for his concise and logical presentation of a complicated matter.