## N. & G. TAYLOR CO. v. BERGER et al.
### No. 6623.

District Court, E. D. Pennsylvania.
Jan. 15, 1943.

from 59 N. Second Street, where it was located "in a number of old and unsuitable adjoining houses originally constructed as residences" to a more modern building.

No purchase of real estate was involved, the business being merely transferred from leased premises at one place to leased premises at another. The money was spent for taking down the machinery, transporting it and setting it up in the new location.

It is conceded that this step was taken and the money spent without special authorization of the court and without notifying creditors. The receiver had been appointed with broad powers "to continue to manage and operate the business" of the defendant "until further order of the Court" and "incur such expenses and make such disbursements as in his judgment be advisable and necessary in connection with the care, preservation and maintenance of the properties of the defendants." Without deciding the question, it may be assumed for the purposes of this opinion that the expenditure in question is not within these powers.

There is no fraud involved, no diversion of assets, no question of personal gain, and it is evident from the record that, in moving the plant, the receiver was motivated entirely by his informed judgment that the change would benefit the property and business committed to his care. As a matter of fact there is no real controversy that the move was a good one from the standpoint of sound business judgment as applied to the operation of an ordinary going concern. The record shows very plainly that it was. The capacity of the factory was more than doubled, the cost of production was reduced 46 cents per unit which, on average production, amounted to about $1,400 per month, the sales increased markedly, and the more efficient set-up at the new plant unquestionably added something to its value for sale as a going concern.

The point at which the master finds that the receiver exercised bad judgment was in the latter's apparent assumption that he would be permitted to carry on the business at the new plant long enough to realize profits which, even upon the master's findings, he had every reason to expect. Of course, the receiver was wrong in not applying to the court after notice to the creditors for permission to make the change. Had the court authorized it the

Jenkins, Bennett & Libby and Wexler & Weisman, all of Philadelphia, Pa., for creditors.

Frank A. Moorshead, Thomas F. Mount, and Rawle & Henderson, all of Philadelphia, Pa., for receiver.

## KIRKPATRICK, District Judge.

The master's report contains a history of this receivership and of the proceedings in the court, together with a summary of the accounts. It is concise and complete, and that portion of the report is adopted as a basis for this discussion.

Among other items, the master surcharged the receiver $4,977.77, being the cost of moving the plant and machinery

526

authorization would, at least, have amounted to some reasonable assurance that the business would go on long enough to make it worth while. Even so, the question still remains whether there was a loss to the estate.

■ I agree that where a receiver acts outside of the scope of his authority, even though he acts bona fide for what he believes to be the best interests of the estate, he must take the risk and may be surcharged to the extent of any loss incurred as a result. But the master has surcharged this receiver with the whole amount of an expenditure, concededly made for the benefit of the estate, solely because it was unauthorized.

The master found that "no financial advantage to creditors as a result of the moving appears with sufficient clarity to establish any offset to the sum expended." With the statement I cannot entirely agree. It is true that it cannot be mathematically demonstrated that the change resulted in a gain to the estate, greater than the cost of moving. In the nature of things that is not susceptible of such proof. However, it is a fact that this receivership, which for five years lost money at the old premises in every year except the last (when it showed a very small profit), had a net profit of $9,796.19 for the year in which it operated at the new plant. This, taken in connection with the undeniable fact that the efficiency of plant operation had been increased, is the sort of evidence generally accepted in the business world in estimating trends and making plans, and I think it can safely be accepted here as showing, at the least, that the change, taking into consideration the cost of moving, did not result in a net loss to the estate.

After about a year of operation at the new plant the court ordered the receiver to cease conducting the business and to liquidate the assets. I am not at all sure that this action on the part of the court was wise. It was taken at the insistence of certain creditors who had conducted a vehement campaign or criticism against the receiver, which, it seemed to the court, had resulted in loss of confidence and injury to the business. The receiver had unquestionably been very remiss in the matters of reports to the court, and the relations between him and some of the creditors were as bad as possible. Rightly or wrongly, I was convinced that the receivership could not go on satisfactorily.

It was found impossible to dispose of the business as a going concern, and a great deal of the benefit derived from the moving was lost by closing it down and selling the assets in liquidation. This, however, does not affect my finding that there was no net loss.

■■ In the face of what appears to be satisfactory proof that the unauthorized act did not involve loss to the estate, it is not the court's duty to surcharge the receiver to the extent of the money laid out. To so hold would mean that a trustee who makes a shrewd though unauthorized investment which results in profit to the estate must be surcharged the amount of the capital which he used for the investment although its value has actually been increased. "A receiver is not personally liable beyond the actual damages sustained by reason of his misconduct." Corpus Juris, Receivers, Sec. 226 (53 C.J. 175).

It is quite true that the overall picture presented by this receivership is bad. The receiver apparently had little notion of the duties and limitations of a court-appointed trustee and his general method of conducting the receivership can only be viewed with the strongest disapproval. In this respect advice, or lack of advice, of counsel is no excuse. But I do not think that he should be surcharged in respect of the cost of moving as a penalty for his undoubted dereliction in the matters of reports and information to the court and creditors.

■ What has been said with regard to the surcharge for the cost of moving also applies to some extent to the surcharge for excessive withdrawals on account of compensation for the receiver's services. These withdrawals also were made without order of the court. Again the same general rules apply. An equity receiver who pays himself compensation without authorization does so at his own risk. If he takes too much he may be required to pay back by way of surcharge all excess over a reasonable amount. If his withdrawals are so large as to indicate bad faith or fraud or to amount to a conversion he may be removed and he forfeits the right to any compensation at all. But unless the irregularities amount to fraud or conversion of funds the severe penalty of forfeiture of all compensation should not be imposed. Nor is it possible to take a middle ground and allow a receiver something substantially less than fair value of

his services. Either his compensation is forfeited or he is entitled to what his services are worth. In the present case, I think the receiver is entitled to be compensated at the fair value of his time and effort.

The master found that the fair value of the receiver's services was some $4,800 less than the amount he had paid himself. Again I do not agree. After a careful study of the whole record I think that the $50 per week allowed by the master as reasonable is too small for the work done. I think the amount paid to himself by the receiver represents about the fair value of his services.

The remaining matters raised by the exceptions to the account do not require discussion. As to them, I agree with the master's disposition.

Exceptions Nos. 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15 and 16 to the master's report are sustained. All other exceptions are dismissed.

An order may be submitted in accordance with the foregoing.