## In re REAL ESTATE MORTGAGE GUARANTY CO.

### No. 21426.

District Court, E. D. Pennsylvania.
June 20, 1944.

Horace Michener Schell, of Philadelphia, Pa., for receiver.

George Zolotar, of Philadelphia, Pa., for Securities & Exchange Commission.

Paul Freeman, of Philadelphia, Pa., for trustee.

KIRKPATRICK, District Judge.

In equity proceedings, brought in 1932 by a citizen of Virginia, a receiver was appointed for Real Estate Mortgage Guaranty Company, a Pennsylvania corporation engaged in the business of lending money on mortgages and selling them, with its guaranty, to the investing public, generally in the form either of bonds or of fractional certificates of participation. Some $4,000,000 of bonds and certificates were then outstanding. After about eight years of operation, the receivership terminated in bankruptcy under Bankr.Act Chapter X, 11 U.S.C.A. § 501 et seq., and a trustee was appointed. The receiver has filed his ninth and tenth accounts which have been audited by a special master. The trustee in bankruptcy has filed exceptions to the master's refusal to surcharge the receiver in the amount of commissions received by him as an insurance agent during the receivership for placing insurance upon various properties which the company had acquired through foreclosure or otherwise.

The facts are not in dispute and I affirm and adopt the master's findings as stated in his report. The substance of them is as follows:

The receivership never amounted to much more than a conservation of assets for orderly liquidation and the receiver's duties consisted mainly of the leasing, management and upkeep of a number of buildings of various kinds with a view toward their ultimate sale. Before and during the receivership he operated a successful insurance agency business, and, prior to his appointment as receiver and while he was the president of the company,

he had, with the full approval of the board of directors and of many of the security holders, placed and serviced all the company's insurance through his agency. After he became receiver he continued the relationship as before. The agency was a corporation but there is no dispute that through his interest in it, the receiver personally profited by commissions earned on the receivership's insurance business, to the extent of some $15,000.

There has never been the slightest suggestion of any fraud or sharp dealing on his part. The premiums paid by the company were exactly the same as it would have paid had the insurance been placed through any other agency. The possibility of over-insurance was carefully guarded against. Following his appointment, the receiver obtained appraisals of all of the properties from leading building contractors, which appraisals were reviewed annually and, when necessary, reappraisals made. Not only did the receiver's handling of the insurance cause no loss to the estate but it is quite possible that a change to a new agency at the time he became receiver would have been detrimental. Not only was he an expert insurance man, but he had a detailed knowledge of the properties and an insight into their particular insurance problems which a new agent could hardly have acquired without a good deal of lost motion. At any rate, all parties agree that the insurance was well taken care of and that there was no loss to the trust.

In continuing to handle the company's insurance after the receivership the receiver acted without court authorization but with the full knowledge, consent and express approval, through authorized representatives, of a majority ($2,740,000 in face value of securities) of bond and certificate holders, which consent and approval was subsequently ratified in writing. The company is and was, during the receivership, insolvent to a degree that would eliminate stockholders and general creditors and leave security holders the only parties who could be affected by the payment of the commissions.

█ The master held (and I agree) that under the law of Pennsylvania, there being no element of bad faith or loss to the estate, this receiver would not be surcharged. Semans v. United Lumber Co., 281 Pa. 404, 126 A. 776; In re Harton's Estate, 331 Pa. 507, 1 A.2d 292.

█ For the federal courts the law is otherwise. It has been stated by the Supreme Court in Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 82, 59 L.Ed. 151, as follows: "It is a well-settled rule that a trustee can make no profit out of his trust. * * * It makes no difference that the estate was not a loser in the transaction, or that the commission was no more than the services were reasonably worth. It is the relation of the trustee to the estate which prevents his dealing in such way as to make a personal profit for himself."

█ Does the federal rule apply?

If so, does it require this receiver to be surcharged to the extent of his interest in the insurance commissions in view of the fact that nearly 70 percent of the ultimate beneficiaries of the trust consented to his performing the services by which they were earned?

The master was of the opinion that Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, required him to follow the law of Pennsylvania. With deference to his painstaking and able analysis of the recent decisions of the Supreme Court, I am unable to agree with his conclusions.

True, the parties to the original equity proceeding came into the federal court, solely by virtue of diversity of citizenship and, if we were engaged in determining their substantive rights or those of creditors sequentially brought in, there would be no doubt that the Pennsylvania law would be controlling. I cannot, however, look upon this question as one which involves substantive rights of litigants.

What is the real nature of a receiver's liability in cases of this kind? He is not brought to account upon any theory resembling tort liability, as in cases of negligence or misfeasance where the basis is, at least in part, indemnity for loss. Nor do profits "belong" to the estate as in the case of a profit arising from a purchase of trust property by the receiver and a resale for his own account, in which it might be said that he took the profit under a constructive trust for the estate, on the theory that it represents part of the real value of a trust asset which only the misconduct of the trustee prevented the estate from realizing, or, perhaps, a profit which, by proper effort on his part, he could have earned for it. But these commissions are quite different. They do not

represent the value of anything which ever in any sense belonged or could have belonged to the estate. The estate could not have earned them without illegal rebating, and, if the receiver had not, some third party would.

The matter is wholly administrative and disciplinary, quite as much so as depriving the receiver of all compensation in cases of more serious dereliction. Parenthetically, it is conceded by all parties that the court has discretionary power to do that in the present case, but I doubt that anyone would argue that creditors have a standing, by virtue of any substantive right to the receiver's compensation, to demand its forfeiture, altough the estate would be increased thereby. The doctrine that a receiver may not retain a personal profit made out of his trust is a prophylactic rule. It implements the law's precept that a trustee must give undivided loyalty to his trust. The surcharge is the sanction.

In a broader aspect, the integrity of the federal court itself is involved. " 'When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate, through the receiver as its officer,' * * * Porter v. Sabin, 149, U.S. 473, 479, 13 S.Ct. 1008, 1010, 37 L.Ed. 815, 818." Atlantic Trust Co. v. Chapman, 208 U.S. 360, 371, 28 S.Ct. 406, 409, 52 L.Ed. 528, 13 Ann.Cas. 1155. It seems to me inconceivable that the Supreme Court in Erie R. Co. v. Tompkins had the slightest intention of compelling federal courts to adjust their standards for the proper administration of property committed to their care to local conceptions of official duty which might easily be completely foreign to their own. Such an inroad upon the power of the court to regulate the conduct of its own officers and agents is not to be made except upon the unmistakable mandate of the Supreme Court.

By the federal rule, as stated in Magruder v. Drury, supra, neither the fact that the receiver acted in good faith or that what he did resulted in no loss to the estate is ground for withholding the penalty. To that extent the rule is inflexible and rightly so and I have no desire to whittle it down or relax it. It is highly desirable that every receiver should definitely understand that he may not put his judgment in the conduct of the trust business to the hazard of a possible conflict with his own personal interests.

But it is a universal qualification that a trustee may retain a personal profit if he made it with the full knowledge, consent and approval of the beneficiary. That factor was not in the Magruder case. In the present case a substantial majority of the ultimate and only beneficiaries of the trust knew of and consented to the receivers earning these commissions by placing the insurance through his own agency. I think that is a controlling factor and that it gives the court full discretion to deny the surcharge.

I recognize the fact that less than 100 percent of the creditors consented (though in this connection it is of at least passing interest to note that of the 30 percent of security holders who did not expressly consent, not one appeared before the special master to object) and, if it were a question of property rights of the creditors, the receiver might not be relieved or, at best might be relieved only pro tanto. But the conduct of the receiver, not the right or title to the money earned, is the thing involved, and the question is, Is the receiver guilty of a breach of the duty of loyalty when, with the knowledge, consent and approval of 70 percent of the creditors he performs in good faith services for the estate by which the estate benefits and for which he receives pay from outside parties? I think that he is not.

I agree that 70 percent of the creditors of a receivership cannot, by any principle of waiver or estoppel, destroy property rights of an uninformed minority, but, again, we are examining the conduct of the receiver. An operating receivership is a practical business matter as well as a trust and, in a large estate with numerous and scattered creditors, consultation with the authorized representatives of a large majority is usually highly desirable. Of course, acting in accordance with their wishes, in the absence of court approval, will not always absolve the receiver. Each case depends on its own circumstances, but I think that, where the services rendered were beneficial, as in the present case, the receiver's disclosure to the creditors and their consent frees his course from any taint of disloyalty and makes it

unnecessary to surcharge him, even on the strictest application of the rule.

■ Failure to apply for court authorization is, of course, not to be approved. Had this receiver applied for authorization, I have little doubt that it would have been promptly granted. His failure to do so does not make the surcharge mandatory or remove it from the court's discretion. Specialty Products Co., Inc., v. Universal Industrial Corporation, D.C., 21 F.Supp. 92. See also N. & G. Taylor Co. v. Berger, D.C., 49 F.Supp. 524.

The recent decision of the Supreme Court in Crites, Inc., v. Prudential Insurance Co., 64 S.Ct. 1075, has been called to my attention. It is not directly in point but is interesting in view of the stress laid throughout the opinion upon the fact that the receiver failed to advise anyone, either the court or the creditors, of the transaction from which he made a profit.

I, therefore, hold in the present case that there is no ground for surcharge of this receiver and the exceptions to the master's report are dismissed.