In re PHILADELPHIA & WESTERN RY. CO.

No. 18014.

District Court, E. D. Pennsylvania.
Feb. 11, 1946.

---

David A. Kerr and Richard Hay Woolsey, both of Philadelphia, Pa., and Frank M. Hunter, of Media, Pa., for Philadelphia Suburban Transp. Co. .

Drinker, Biddle & Reath, of Philadelphia, Pa., for debtor.

David F. Maxwell (of Edmonds, Obermayer & Rebmann), of Philadelphia, Pa., for Bondholders Committee.

M. Carton Dittmann, Jr., John Wintersteen, and George Wharton Pepper, all of Philadelphia, Pa., for respondents.

KIRKPATRICK, District Judge.

The debtor was for a period of more than ten years in reorganization under 77B, Bankr.Act, 11 U.S.C.A. § 207. No trustee was appointed, but the debtor was continued in possession under the management of directors approved by the Court. The debtor has been at all times during reorganization insolvent. A plan of reorganization has been approved and put into effect, under which the holders of the first mortgage bonds of the old company acquired ownership of all its assets through a distribution of cash and securities of the reorganized company.

During the reorganization period certain directors and other persons standing in various relations to the directors purchased bonds of the company. Some of these they now hold, and others have been sold by them at a profit. This is a petition for an order requiring the respondents to account for any and all profits made by 'them as a result of such transactions, and directing that the participation of those who still hold bonds in the cash and securities of the reorganized company shall be limited to the cost to them of the bonds of the old company.

The directors of a going corporation occupy at least a quasi-fiduciary relationship to the corporation and its stockholders. They may not trade for their own benefit in the corporation's assets and they have frequently been held accountable for profits realized from the acquisition by them of adverse claims and interests but, so long as the corporation is solvent, the relationship has never been held to deny a director the right to purchase outstanding corporate obligations at a discount and enforce them against the company for their full amount, unless, of course, there is overreaching or injury to the corporation. Securities and Exchange Commission v.

Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. The element of personal profit in the transaction is not enough to condemn it.

If, however, the corporation becomes insolvent, the duties and obligations of the quasi-trusteeship become more closely assimilated to those of regular trustees. This may be partly due to the influence of the frequently repeated generalization that the assets of an insolvent corporation are a trust fund for the benefit of the creditors, and partly to the fact that, when the corporation is insolvent, ownership of its obligations, particularly its mortgage bonds, comes very close to being the full equivalent of ownership of its assets. At any rate, courts of equity, administering the affairs of such corporations, have set a standard of conduct stricter than that "permissible in a workaday world", Meinhard v. Salmon, infra. When bankruptcy follows insolvency and the debtor is left in possession without the intervention of a trustee, the directors, holding office under Court appointment or Court approval, become in all respects, so far as their fiduciary obligations are concerned, the full equivalent of a trustee in bankruptcy. In re Los Angeles Lumber Products Co., D.C., 46 F. Supp. 77; In re Cheney Bros., D.C., 12 F. Supp. 605; In re James Butler Grocery Co., D.C., 12 F.Supp. 851. As such, they may not traffic, to their own profit, in either the assets or the obligations of the debtor. In re McCrory Stores Corp., D.C., 12 F.Supp. 267; Monroe v. Scofield, 10 Cir., 135 F.2d 725.

The rule is one of policy and is in general the same as that laid down by the Supreme Court in Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 82, 59 L.Ed. 151, "It is a well-settled rule that a trustee can make no profit out of his trust. * * * It makes no difference that the estate was not a loser in the transaction * * *. It is the relation of the trustee to the estate which prevents his dealing in such way as to make a personal profit for himself." It is proper to say of the respondents in this case that no wrong was intended and none was, in fact, done to the debtor, but that is precisely what the Supreme Court said of the defendant in the Magruder case, supra. If a trustee may use his position and the inside information which he has acquired to his own advantage in cases where there is no conflict with the interests of his cestui que trust, the temptation will

always be present to do so in cases where there is such conflict. That is the basis of the rule and it applies in this case although there is no charge, no evidence and no suggestion of fraud, overreaching or of any harm to the debtor.

In Re Mountain States Power Co., 3 Cir., 118 F.2d 405, 407, the Court quoted with approval the rule as stated by Justice Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1, "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. * * * Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions." In referring to Section 249 of the Chandler Act, 11 U.S.C.A. § 649, which denied compensation to members of security holders' committees who traded in securities involved in reorganization, Judge Maris, in his opinion in the Mountain States Power Co. case, supra, said, "The effect of Section 249, however, was merely to make explicit under Chapter X what had been implicit under Section 77B, namely, that one who assumes a fiduciary relationship in connection with a corporate reorganization must conform to the standards of conduct which the law imposes upon fiduciaries."

The respondents contend that the Supreme Court in its decision in Securities and Exchange Commission v. Chenery, supra, announced the broad rule that directors and officers of a corporation in reorganization may traffic in the securities of the corporation. However, in that case the reorganization was under the Public Utilities Act, 15 U.S.C.A. § 79 et seq. Moreover the corporation was not insolvent and, as pointed out, courts of equity have never regarded the directors and officers of a solvent going corporation as trustees in the full sense of the word.

■■ The conduct forbidden is the purchase of the bonds of the debtor in order to realize a profit. The rule does not in a case such as this one require that investments made in good faith by directors prior to assuming office must remain frozen in their hands. These directors will not be compelled to account for profits from sales of bonds which had been purchased in good faith before their appointment but only

for such profit as they realized from the sales of bonds purchased during their incumbency.

The directors and officers who bought or sold bonds during their incumbency as such directors or officers will be limited in their claims against the estate on account of their holdings of bonds of the debtor to the actual cost to them of such bonds, less any profits they may have realized from the sale of other bonds which were purchased by them during their incumbency as directors appointed by the Court. Certain of the respondent directors were beneficiaries of trust estates and were also trustees of these estates. They made purchases as such trustees. It is obvious that these purchases inured to their individual benefit and the claims of such trust estates must be similarly limited. This limitation is not imposed upon the theory that such profits belong to the corporation by reason of any property right that it may have in them but is an administrative sanction for the enforcement of the rules of fiduciary conduct set by the law. See In re Real Estate Mortgage Guaranty Co., D.C., 55 F.Supp. 749.

The respondent, Agnes C. McKernan, was not an officer, director or employee of the debtor company. She was an officer of the Conway Corporation, which had a management contract with the debtor for the management of the debtor's business. It appears that Miss McKernan purchased her bonds for her own account and with her own funds and that no director or officer of the debtor had any interest in her purchases, direct or indirect. She was not a fiduciary who owed a duty to the debtor. Hence, I see no reason why her claim against the company should in any way be disturbed.

The respondent, J. Prescott Stoughton, was the father of Russell S. Stoughton who was an officer of the debtor. In this case also it appears that the purchases were made by the father with his own funds and for his sole account and that neither Russell S. Stoughton nor any other person associated with the debtor had any interest in his dealings in the bonds of the debtor. For the same reasons that I dismiss the petition as to Agnes C. McKernan I must dismiss the petition as to J. Prescott Stoughton.

A decree may be submitted in accordance with this opinion.