**In the Matter of HAPPY TIME FASHIONS, INC., Bankrupt.**

**Bankruptcy No. 74 B 1740.**

United States Bankruptcy Court,
S. D. New York.

Dec. 5, 1980.

Otterbourgh, Steindler, Houston & Rosen, New York City, for trustee.

Arutt, Nachamie & Benjamin, New York City, for bankrupt.

MEMORANDUM OPINION

BURTON R. LIFLAND, Bankruptcy Judge.

### FACTS

This is an action by the New York Credit Mens' Adjustment Bureau, Inc., as Trustee in Bankruptcy of Happy Time Fashions, Inc. ("Happy Time"), against Henry Kohn, former president, chief operating officer, sole shareholder and sole director of the bankrupt corporation, which essentially seeks damages in the form of a surcharge and to recover a preference.

Two important issues are presented:

a) Whether an individual who was the mind, hands and pockets of a now bankrupt corporation, may be held personally responsible for unsatisfied federal and state tax claims where Court orders requiring the timely payment of such taxes were willfully disregarded during a previous, aborted, Chapter XI reorganization attempt. If not, the trustee in bankruptcy must now meet these federal and state tax claims solely from estate funds with the result being the dilution of monies available to other creditors.

b) Whether false assurances to the Court of compliance with its orders mandates entry of a money judgment in addition to and independent of the traditional sanctions available to a Bankruptcy Court in the exercise of its inherent power both to vindicate its jurisdiction and integrity, and to protect and defend the estate committed to its custody.

Happy Time was a manufacturer of popularly priced women's apparel. On December 9, 1974, Mr. Kohn, as president of Happy Time, petitioned the Court for an arrangement under § 322 of the Bankruptcy Act,[1] (former) 11 U.S.C. § 722. On December 11, 1974, an order was entered authorizing the Debtor to continue operating the business and to remain in possession of its property. § 342, (former) 11 U.S.C. § 742. Part of this order required the "Debtor in Possession" to

---

1. The 1898 Bankruptcy Act, the law as it stood prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2683.

segregate and hold separate and apart from all other funds all monies deducted and withheld from employees or collected from others for taxes under any law of the United States or of any state or municipality or political subdivision thereof during the pendency of the proceeding and to forthwith deposit the amounts so withheld or collected in a separate tax and trust account. . . .

At the same time, a separate order was entered directing:

> [t]he debtor-in-possession and its President, Vice President, Secretary and Treasurer, and any other person set forth in Section 7b of the Bankruptcy Act . . . to segregate and hold separate and apart from all other funds all moneys deducted and withheld from employees or collected from others for taxes under any law of the United States during the pendency of the proceeding and to forthwith deposit the amounts so withheld or collected in a separate tax account.

The reorganization attempt failed and Happy Time was adjudicated a bankrupt on April 15, 1976. Plaintiff was named as Trustee and discovered that over $25,000 in state and federal taxes had not been paid.[2] Monies were not segregated from the Chapter XI Debtor's general funds in accordance with the aforementioned judicial orders. Rather, the monies were diverted to pay for other obligations.

Consequently, the Trustee now seeks to recover judgement against Mr. Kohn for the amount of taxes that accrued during the arrangement proceeding. The Trustee points out that if its requested relief is denied, the estate must cover these taxes, thus diluting monies available for other creditors.

A second prong of the Trustee's complaint seeks recovery from Mr. Kohn for payments made by Happy Time to Mr. Kohn, which allegedly constitute "preferences" within the meaning of Section 60 of the Bankruptcy Act, (former) 11 U.S.C. § 96. In addition, simultaneously with the filing of this proceeding, the Trustee sought a certification of facts from this Court to submit to the District Court for a contempt proceeding against Mr. Kohn, § 41(a), (former) 11 U.S.C. § 69, Bankruptcy Rule 920, based upon noncompliance with the tax orders; however, at a hearing on all issues, the Trustee elected to hold his request in abeyance, pending a disposition of this adversary proceeding.

In eschewing a formal answer to the complaint, Mr. Kohn filed an affidavit which in summary states that he has no means to satisfy any judgment. No other response to the complaint was submitted.

A bankruptcy case strikingly similar to the one at bar, *Matter of Arbor Homes, Inc.*, 2 CBC 35, CCH Bankr.L.Rptr. ¶ 65, 412 (D.Conn.1974), held two chief operating officers of the Debtors in Possession (comprised of three companies) personally liable to a later-appointed liquidating trustee for the amount of the taxes the two officers improperly failed to pay in accordance with a Court order directed to them entered during the previous Chapter XI arrangement attempt.

In *Arbor Homes*, two tax orders were entered. One order, (continuing the Debtors in Possession with the authority to operate the business), provided that the Debtors in Possession were "to pay and discharge out of any funds now or hereafter coming into its hands all taxes and similar charges lawfully incurred in the operation of said business . . ." The order did not specifical-

---

2. The Trustee in Bankruptcy asserts liability against Mr. Kohn for concealed losses to the estate represented by the following filed administrative claims:

a) Claim No. 76 filed by New York State Unemployment Insurance for the period of July 1, 1975 through December 31, 1975 . . . . . . . . . . . . . . . . . . . . . $ 3,069.90

b) Claim No. 92 filed by the Internal Revenue Service for Withholding and FUTA taxes incurred during the pendency of the Chapter XI proceeding . . . $18,752.17

c) Claim No. 102 filed by the New York State Tax Commission for Withholding taxes incurred during the Chapter XI proceeding . . . . . . . . . . . . $ 3,605.56

$25,427.63

ly charge particular officers with the payment obligation. A second order required the payment of federal taxes and provided with specificity that:

> The debtor in possession and *its president, vice president, secretary and treasurer, and any other person set forth in Section 7(b)* of the Bankruptcy Act are hereby directed and required to segregate and hold separate and apart from all other funds all monies deducted and withheld from employees or collected from others for taxes under any laws of the United States during the pendency of the proceeding and to forthwith deposit the amounts so withheld or collected in a separate tax account. Such amounts shall be used and disbursed only for the particular purposes for which they are set aside or as more specifically set forth below. (emphasis supplied)

Neither the debtor or its officers segregated, deposited nor paid federal taxes as directed by the aforementioned Court orders. Consequently, the Court directed the officers to personally pay the estate the full amount of the unpaid withholding and social security taxes (presumably, basing its decision on the second order relating to Federal withholding taxes). The Court's rationale was simple. If the officers had informed the Court of an inability to meet both tax and other business obligations, (and had not violated the Court's orders), adjudication would have been certain, and further administration expenses would not have accrued, depleting the estate.

In the case at bar, Mr. Kohn, like the officers in *Arbor Homes*, clearly violated the federal tax order specifically directed to him as an officer and director.[3] Furthermore, in this Court's view, Mr. Kohn, who was in complete control of the former Debtor in Possession, was under a duty to segregate in a tax trust account *all* taxes, not just taxes owing to the United States. This Court finds no logical distinction in this case between the duty of Mr. Kohn as an officer and director to pay federal taxes and the duty of the Debtor in Possession to pay federal and *all other* taxes. Such a distinction of form would be without substance and is meaningless under the facts.[4]

Mr. Kohn signed and submitted the petition requesting the order for continuation of the business. He was fully aware of *all* the orders of the Bankruptcy Court, and in his control position, was bound to abide by them. The record reveals that the Court repeatedly and explicitly emphasized to Mr. Kohn the importance of his segregating monies and keeping them in a separate bank account. The Court was nevertheless consistently misled by false statements made in open Court by Mr. Kohn under oath and by counsel in his presence, who, it must be charitably assumed, responded after consultation with Mr. Kohn.

*April 7, 1975; Herzog, B. J.*

Mr. Rattet [Attorney for Happy Time]: Your honor, the taxes here are current (pp. 1, 2) Mr. Rattet: The taxes are current, your honor. (p. 4)

*May 9, 1975; Herzog, B. J.*

Mr. Rattet: Your Honor, the debtor is operating; the taxes are current, and we filed a plan which was approved by the committee. (p. 2)

*June 9, 1975; Herzog, B. J.*

Mr. Rattet: Your Honor, Happy Times Fashions has its taxes current. (p. 2)

*September 9, 1975; Herzog, B. J.*

---

**3.** Section 41(a), (former) 11 U.S.C. § 69 (Contempts Before Referees) provides that: "A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process or writ."

**4.** One District Court, in a three-page non-published opinion reversing the Bankruptcy Court below, refused to surcharge officers of a corporation who had disregarded an order of the Court to establish a segregated tax account, distinguishing *Arbor Homes* on the fact that the order before the Court failed to specifically designate the officers of the Court, while the order in *Arbor Homes* specified officers. *In the Matter of Centaur Inn of Eureka, Inc.*, 8 CBC 67, 2 BCD 253, *rev'd* No. 1-73-531, No. C-76-817 (N.D.Cal. 1976). This Court finds no reasonable basis upon which such a blanket distinction can be drawn. Further the District Court's opinion was expressly limited to the "circumstances of this case".

Mr. Rattet: Taxes are current, your Honor, and I believe Mr. Kohn filed the most recent statement and is up to date. (p. 2)

*December 15, 1975; Galgay, B. J.*

Mr. Rattet: Taxes are current. (p. 2)

*November 18, 1975; Galgay, B. J.*

Mr. Rattet: Would *you* tell the Judge whether your taxes are current and whether or not you have been operating at a profit since July?

Mr. Kohn: Since July I have been braking out about even.

Mr. Rattet: Are your taxes paid?

Mr. Kohn: Yes. (pp. 4, 5)

*December 17, 1975; Babitt, B. J.*

The Court: Could you tell me, did you advise your client about taxes.

Mr. Sachs [attorney for Happy Time]: Yes, sir.

The Court: All monies withheld are to be kept in a separate bank account.

Mr. Kohn: Yes, Your Honor.

The Court: Trust monies are not to be used no matter how difficult things become.

Mr. Kohn: Yes.

The Court: You will file operating statements as called for?

Mr. Sachs: Yes, Your Honor. (p. 4)

*January 26, 1976*

The Court: Taxes are current?

Mr. Sachs: Taxes are current. (p. 8)

Nor can Mr. Kohn complain that a surcharge in the amount of unpaid taxes would provide the Debtor with a windfall. *See Arbor Homes, supra.* The Court of Appeals for this Circuit addressed a similar "windfall" argument made by a former corporate director who was surcharged. In denying the defense, the Court stated:

> The argument is not without force; at first blush, it would seem that no injustice would be done to creditors whose claims were subordinate to those of payroll claimants, by permitting the appellant to be subrogated to the priority of the latter, and that failure to do so would produce an unjust enrichment of the former. But this view overlooks the fact that continuation of the business had de-

pleted the trust estate originally held for the benefit of creditors . . . , and that the order of liquidation would doubtless have been entered earlier, had the Court been informed by the debtors as it should have been, that goods could not be purchased nor payroll obligations met, without pledging the accounts receivable.

*In re Avorn Dress Co., Inc.,* 70 F.2d 337 (2d Cir. 1935).

In fact, this Circuit has traditionally surcharged *fiduciaries* for losses stemming from their breaches of duty that dilute assets of the estate. For instance, in *In re India Wharf Brewery,* 96 F.2d 710 (2d Cir. 1938), the Court surcharged a trustee for the loss that resulted when he closed a contract for the sale of a bankrupt's property without compelling the buyer to put down a minimum deposit as required by an order issued by the Bankruptcy Court. *See also United States v. Kaplan,* 74 F.2d 664 (2d Cir. 1935); *Cf. State of Delaware v. Irving Trust Co.,* 92 F.2d 17 (2d Cir. 1937), *cert. denied* 302 U.S. 754, 58 S.Ct. 283, 82 L.Ed. 583 (1937) (trustee not surcharged where he had no notice or knowledge of tax claims). Mr. Kohn was clearly a fiduciary in this case.

It has long been held that a trustee in bankruptcy stands in a fiduciary relationship to the creditors of the bankrupt estate. *In re Allen B. Wrisley Co.,* 133 F. 388 (7th Cir. 1904), *cert. denied sub nom. Central Commercial Co. v. Chicago Title and Trust Co.,* 197 U.S. 622, 25 S.Ct. 798, 49 L.Ed. 910 (1905). In an arrangement proceeding, however, where a trustee is not appointed, for all practical purposes, a director of Chapter XI debtor in possession is in the same position as a trustee in bankruptcy. *In re Philadelphia & Western Ry. Co.,* 64 F.Supp. 738, 740 (E.D.Penn.1946).

Where bankruptcy follows insolvency and the debtor is left in possession without the intervention of a trustee, the directors, holding office under Court appointment or Court approval, become in all respects, so far as their fiduciary obli-

gations are concerned, the full equivalent of a trustee in bankruptcy.

*Id.* at 740.

In the case at bar, the debtor in possession's trustee responsibilities and fiduciary obligations devolved upon Henry Kohn who was not only the sole director, but the sole shareholder and chief operating officer as well.

Labeling Mr. Kohn the functional equivalent of a "trustee" and a "fiduciary", is not dispositive of the issues. As Justice Frankfurter observed:

> But to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?

*SEC v. Chenery Corp.*, 318 U.S. 80, 85–86, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

A trustee in bankruptcy is an officer of the Court that appoints him. He is responsible for his wrongful conduct affecting assets of the bankrupt estate and is accountable to the Bankruptcy Court. *In re Johnson*, 518 F.2d 246, 250 (10th Cir. 1975) *cert. denied Clark v. Johnson*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975); *Chappel v. First Trust Co. of Appleton, Wisconsin*, 30 F.Supp. 765, 766 (E.D.Wis. 1940).

Generally, the standard of conduct required of a trustee is the exercise of due care, diligence and skill in both affirmative as well as negative acts. Due care is that standard of care an ordinary, prudent person in the conduct of his private affairs under similar circumstances and with a similar object in view would exercise. Where a trustee (or other like fiduciary) breaches the standard of care demanded of him, he is personally liable for any resultant loss.

*In Mosser v. Darrow*, 341 U.S. 267, 274, 71 S.Ct. 680, 95 L.Ed. 927 (1951), the Supreme Court stressed that the position of a bankruptcy trustee is "serious business and is not to be undertaken lightly." Further, the Court noted that the doing of forbidden acts by a trustee calls for the sanction of *personal liability*.

The sanction of personal liability for breach of fiduciary obligations is not novel. A leading bankruptcy treatise, *Collier on Bankruptcy*, (in discussing the related areas of expenses and costs), comments:

> Section 62a [Expenses of Administering Estates ...] constitutes only a statutory application of a thoroughly recognized and time-honored mode of enforcing the court's supreme authority: the right to *surcharge* the accountable officer wherever the court finds that he misused his discretion. * * * The power to surcharge is the very essence of § 62a. It is this power that puts teeth and practical significance into an otherwise formal provision.

(Emphasis in original) 3A *Collier on Bankruptcy* § 62.03[3] (14th Ed.) at 1408.

Furthermore, Mr. Kohn was a fiduciary to the corporation. It is well established that directors and officers of a corporation are fiduciaries, and their good faith or innocent motives (including a well-intentioned purpose to effectuate a plan of reorganization) is no defense to liabilities founded upon breaches of fiduciary obligations. *In re Los Angeles Lumber Products Co.*, 46 F.Supp. 77, 88 (S.D.Cal.1941); *In re McCrory Stores Corp.*, 12 F.Supp. 267, 269 (S.D.N.Y.1935); *In re India Wharf Brewery*, 96 F.2d 710 (2d Cir. 1938).

Moreover, it is fundamental that damages resulting from neglect of duty by a corporate fiduciary are recoverable by the corporation, and this right passes to the trustee of a bankrupt corporation. Since the corporation itself could have maintained a suit for reimbursement from its fiduciaries for misconduct, the right of action is an asset of the corporation that passes to a trustee in bankruptcy. *See Gochenour v. Cleveland Terminals Building*, 118 F.2d 89, 93 (6th Cir. 1941).

In the case at bar, the Trustee, as the fiduciary representative of the claimants of the bankrupt estate, has brought

against Mr. Kohn an action for damages. Mr. Kohn clearly breached his fiduciary duties owed to these claimants by blatantly disregarding important Court orders of which he was fully aware. He did not exercise the reasonable diligence required of a trustee, applicable to him. He further acted outside the permissible scope of his authority. Because of this unconscionable conduct, the surcharge remedy sought here by the Trustee is amply warranted.

Although there is no allegation that Mr. Kohn converted or otherwise directly benefited from Happy Time's failure to pay the taxes,[5] this is immaterial to the imposition of a surcharge on a fiduciary. The Supreme Court has recognized that surcharge is a heavy burden for someone who enjoys no personal profit; yet, because there are effective ways to avoid personal liability, the Court recognizes its application in these cases. It is necessary to strengthen and reinforce proper administration by fiduciaries. *See Mosser v. Darrow*, 341 U.S. 267, 275, 71 S.Ct. 680, 95 L.Ed. 927 (1950).

Analogously, improper conduct on the part of the corporate officers has been frequently penalized by withholding compensation, reimbursement, or both. 3A *Collier on Bankruptcy* § 62.05 (14th Ed.) at 1431; *See e. g. Matter of Arlan's Department Stores, Inc.*, 615 F.2d 925 (2d Cir. 1979).

To conclude, it is this Court's opinion that both logic and the authorities cited dictate that Mr. Kohn be held personally liable for the amount of taxes he did not segregate and pay to both federal and state governments. Credibility in the efficient administration of bankruptcy matters can only be achieved by the judicial retention and application of surcharge in situations such as the instant one.

■ With respect to the second prong of plaintiff's complaint, the Trustee asserts that Mr. Kohn received payments totaling $5,959 in the four-month period prior to bankruptcy on account of an antecedent debt due and owing from the Bankrupt. The Trustee further claims that the Bankrupt was insolvent within the meaning of the Bankruptcy Act and that Mr. Kohn, as sole officer, director and shareholder of Happy Time, knew or had reason to know the bankrupt was insolvent during that period, and further, that the effect of the payments was to enable Mr. Kohn to obtain a greater percentage of his claimed debt than other creditors of the bankrupt in the same class. Since the properly pleaded allegations of the Trustee's complaint are uncontroverted by Mr. Kohn, the Plaintiff's allegations are deemed admitted. F.R. Civ.P. 8(d).

Section 60(a) of the Bankruptcy Act, (former) 11 U.S.C. § 96(a), states that a preference is:

a transfer ... of any property of the debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

A preference may be avoided by the Trustee under Section 60(b) of the Act, (former) 11 U.S.C. § 96(b), "if the creditor receiving it ... has, at the time when the transfer is made, reasonable cause to believe the debtor is insolvent."

Since the Plaintiff's allegations are taken as admitted, there is a preference under Section 60(a) of the Act, voidable by the Trustee under Section 60(b) of the Act.

Accordingly, the Trustee shall recover from the defendant the sum of $31,386.63 ($25,427.63 corresponding to the unpaid tax claims and $5,959.00 corresponding to the preference payments).

IT IS SO ORDERED.

---

5. There is nothing in the record to indicate whether or not Mr. Kohn continued to draw his Court authorized salary during this period of payment avoidance.