# Moore's Estate (No. 1).

*Partnership—Partner's interest—Outstanding liabilities.*

1. In computing the value of a deceased partner's share in the business, his portion of firm liabilities incurred by the partners jointly in the purchase of stock for their individual ownership is properly charged off against his interest in the firm, as the effect of such a use of the partnership moneys was to withdraw such funds from the partnership.

*Partnership—Surviving partner—Option to purchase—Assumption of debts—Interest.*

2. Where partnership articles give the surviving partner a right to take over the deceased partner's share by paying therefor in certain annual installments with interest, the assumption by the survivor, who is solvent, of the obligations of the decedent's estate for firm debts so as to fully discharge the estate from liability therefor, is equivalent to cash payment and the survivor is liable for interest only on the ascertained value of the deceased's share from the time of the election to take it. It is immaterial to the estate in such a case whether the obligations are paid in cash or whether money for this purpose is borrowed upon long time and at low interest, nor does the fact that

collaterals belonging to the estate remain in pledge for the firm debts make any difference where this is in accordance with the terms of the partnership agreement.

*Executors and administrators—Counsel fees—Surcharge.*

3. Where from the itemized statements of services rendered by counsel for the three executors of an estate, it appears that there was considerable litigation extended over a long period of time, and the amounts involved were large and the services rendered, exacting, and there is no evidence that the amount claimed was excessive, the naked conclusions of an auditing judge, without reasons or findings of fact, that an aggregate of $10,000 for fees was excessive, will be set aside.

Argued March 29, 1910.    Appeal, No. 20, Jan. T., 1910, by Fidelity Trust Company and Walton Pennewill, surviving executors, from decree of O. C. Phila. Co., July T., 1898, No. 56, dismissing exceptions to adjudication of fifth account in Estate of Andrew M. Moore, deceased.    Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.    Reversed.

Exceptions to adjudication of LAMORELLE, J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Ira J. Williams* and *H. Gordon McCouch*, with them *Wm. Rudolph Smith* and *Simpson & Brown*, for appellants.

*Dimner Beeber* and *V. Gilpin Robinson*, with them *W. H. Woodward, John M. Gardner* and *John G. Kaufman*, for appellees.

OPINION BY MR. JUSTICE POTTER, July 1, 1910:

Andrew M. Moore and Joseph F. Sinnott were partners under the firm name of Moore & Sinnott.  The interest of Moore in the firm was seven-sixteenths, and that of Sinnott was nine-sixteenths.  The partnership articles provided that in the event of the death of one

partner, the survivor should have the right to continue
the business for his own individual benefit and profit,
and that he should pay for the share of the deceased
partner in five annual installments. They were engaged
in the business of distilling and selling whisky, and as a
firm they also made large purchases of shares of stock
in corporations, with the intent that the stocks so pur-
chased should be the individual property of the part-
ners. Money was borrowed in the firm name to a large
amount, and the individual partners provided their in-
dividual collateral to secure the loans. The interests of
the partners in the shares of stock which they purchased
were not in the same proportion as their interests in the
firm. Their transactions in purchases of stock resulted
in heavy losses and the creation of a large indebtedness.

Andrew M. Moore died January 26, 1898, testate,
naming as his executors the Fidelity Trust Company,
Walton Pennewill and Joseph F. Sinnott. Five days
later, on January 31, 1898, Sinnott informed Moore's
executors of his intention to exercise his rights under
the partnership agreement. Appraisers were appointed
by agreement who made an inventory and placed a val-
uation upon the assets. A public accountant was also
employed who audited the books and accounts of Moore &
Sinnott and prepared a balance sheet which showed that
the net amount of the share of Moore in the firm was
$29,049.93, subject to possible deductions for bad debts.
This balance was reached by charging to each partner
the amount of money advanced for him or upon his ac-
count, by the firm, and by including his share of the
outstanding liabilities of the firm.

The present proceeding was the adjudication of the
fifth account of the executors of the will of Andrew M.
Moore. The first question raised by this appeal is as to
the amount of interest which should have been paid by
Mr. Sinnott to the estate of A. M. Moore, upon the
amount of the share in the partnership taken over by
him. The auditing judge accepted the result of the ac-

count stated, as of date January 31, 1898, and the settlement made thereunder, and said, "No question can now arise as to the propriety of the settlement made. The matter has been settled for all time by the adjudication of the second account, the audit of which was had June 7 to 13, 1900." But he took a position, with reference to the payments of the firm indebtedness, which resulted in surcharging the surviving executors with the sum of $6,086.32, as interest upon the balance due under the settlement, to the estate of A. M. Moore. It appears that under the stated account it was shown that as of date January 31, 1898, the gross amount of the share of Andrew M. Moore in the business was $376,581.80, but this was subject to the deduction of a balance due to the firm by Andrew M. Moore of $117,042.43, for advances made for him, and of the further sum of $230,489.44, which was the share of Andrew M. Moore in certain bills payable, so that, as against the gross amount of his interest in the firm, an aggregate sum of $347,531.87 was due and payable by the estate of Andrew M. Moore for advances, and as its share of the indebtedness of the firm of Moore & Sinnott. Subtracting this amount of $347,531.87 from the entire value of his interest, which was $376,581.80, leaves, as above stated, the net value of Andrew M. Moore's share in the business at $29,049.93. Upon this amount, Joseph F. Sinnott, by reason of his taking over the entire business, as was his right under the partnership agreement, was of course liable to pay interest, until the amount was liquidated. But the auditing judge assumed that Sinnott was to pay interest upon the gross amount of the share of A. M. Moore, less such amounts as he paid to the firm creditors upon the amount of the obligations which he agreed to pay to them for the Moore estate. We see no warrant for this position. It is apparent that the effect of the use which was made of the firm money in the purchase of stocks, for the individual ownership of the partners, was to withdraw from the business that much of the partnership funds.

It was therefore manifest that the share of each partner in the business, when the partnership was dissolved, could only be ascertained by deducting all advances made for him, and also by charging him with his share of the outstanding firm notes or liabilities. This principle was admitted by the auditing judge. But he did not regard the assumption by Mr. Sinnott of the obligations of the Moore estate to the firm in the sum of $347,581.87, as of date January 31, 1898, as the equivalent of payment of that amount at that time. In this view we think he was mistaken. When Mr. Sinnott assumed the payment of obligations which otherwise the estate of A. M. Moore would have had to discharge, it was precisely the equivalent to their payment in cash, provided of course, that Mr. Sinnott was solvent, and that he did actually discharge the obligations which he thus assumed. Whether he paid them at once, and in cash, or whether he borrowed the money with which to make the payments, upon long time and at low interest, was not a matter of moment to the estate of A. M. Moore. The essential thing was that it was relieved of the necessity of making payment. It had no right to require Sinnott to pay to it interest at six per cent upon the balance due to firm creditors, and thus make a profit out of the arrangement which he made for carrying his indebtedness at a lower rate. So long as Sinnott held the estate harmless, he had the right to make his own arrangements with creditors as to the payment of the firm obligations, upon terms mutually satisfactory. Nor did the fact that the collaterals of the Moore estate remained in pledge make any difference; for that was in accordance with the terms of the partnership agreement. Admittedly Mr. Sinnott did pay the obligations which he assumed, and the collateral was all in due time restored to the estate of A. M. Moore. We see nothing to justify the court below in ignoring the terms of the settlement which fixed the net amount of Sinnott's indebtedness to Moore's estate, at the time when he elected to take the interest of his de-

ceased partner at the sum of $29,049.93. If Sinnott had at that time called upon Moore's estate to pay its share of the obligations in cash, and had then taken advantage of his right under the partnership articles to pay Moore's estate in deferred installments, such deferred payments would of course have borne interest. But Sinnott had the right to do just what he did do; that is, assume the payment of all the firm's outstanding obligations, and pay to Moore's estate the net value of its interest in the firm. The partnership agreement gave Sinnott the right to take over the business "for his individual benefit and profit," as soon as he exercised his option. The surcharge of interest as made by the court below is inconsistent with this right in Mr. Sinnott. The decision in Harbster's App., 125 Pa. 1, bears directly upon the point in question. It was there held that under a similar agreement, the liability of the surviving partners was for the worth of the share of the decedent at the time they elected to take it, under the agreement. The rights of all parties were fixed when the election was made. In the present case, when Sinnott made the election to take over the business, the firm liabilities included the outstanding notes, which of course had to be taken into account in ascertaining the condition of the firm, and the value of the shares of the partners.

The payments which Mr. Sinnott made in discharging the indebtedness of the firm were not payments to the Moore estate, but were payments to the creditors of the firm, made in the discharge of the obligations he assumed under the settlement. We think the auditing judge was therefore in error, in the theory which he adopted, which led to surcharging the executors with interest upon the gross amount of the share of A. M. Moore in the firm, less the amount of interest which he paid to the firm creditors. The liability of Mr. Sinnott to pay interest was only upon the net amount of the share of Andrew M. Moore, which as fixed by the account stated, was $29,049.93.

The second question raised by this appeal is set forth in the twelfth assignment of error, in which complaint is made that the auditing judge erred in reducing the amount allowed for counsel fees for services rendered during a period of nineteen months, including the conduct of extensive and important litigation. Accountants claimed credit for the payment of $10,000, and this amount was reduced by the auditing judge to $7,500. There were three executors and trustees, and each had separate counsel. Itemized statements of the services rendered were submitted, from which it appeared that Mr. Bright rendered service upon forty-four different dates. Messrs. Brown and Williams specified some eighty different dates upon which they rendered service, and the memorandum of Mr. McCouch shows that upon ninety-six different dates he rendered service to the executors and trustees. Mr. McCouch and Mr. Brown testified at length as to the character and extent of the services, and Mr. McCouch testified that in his opinion the services rendered in one of the equity suits in the United States circuit court were in themselves sufficient to justify a charge of $5,000. And the valuation placed upon various other itemized matters of service raised the aggregate to more than $10,000. The litigation during the period seems to have been very considerable, the amounts involved large, and the service rendered, exacting. It embraced several suits in the common pleas courts, two suits in the circuit court of the United States, one appeal to the United States court of appeals, and three appeals to this court, besides the general advice from time to time in the management of the estate. No evidence was offered to show that the services were not worth the amount charged by the able and eminent counsel employed. The learned auditing judge has not given us the benefit of any findings in detail with respect to the value of the services, but has contented himself with the statement of the final conclusion reached by him in fixing the total amount to be allowed. Had

reasons been given which fairly warranted the reduction, or had the items of service for which the charge was deemed too high been pointed out, or referred to, or had findings of fact upon disputed testimony or doubtful inferences as to the value of the services been set forth, we would be slow to question them. But with the mere naked conclusion that under the testimony the amount of the charge for services by counsel as a whole, was excessive, we cannot agree. We are all of opinion that upon the record as it stands in this appeal, no sufficient reason appears for reducing the amount of the allowance claimed for counsel fees. Of the numerous specifications of error filed, it will perhaps be sufficient to sustain the eleventh, twelfth, fifteenth, seventeenth, eighteenth, nineteenth, twenty-fifth, twenty-sixth and twenty-seventh assignments.

The surcharge of $6,086.32, growing out of the restatement of the interest account, is reversed, as is the surcharge of $2,500, in reduction of the allowance for counsel fees. To this extent the decree of the orphans' court is modified.