In re: Estate of John Ott, Deceased.

Argued April 23, 1931.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

56

*J. Harrison Westover,* for appellants.

*Neice A. Malloy,* for appellees.

OPINION BY TREXLER, P. J., July 8, 1931:

This appeal involves the reasonableness of the compensation claimed by the executors and counsel in the estate of John Ott. The estate amounted to $114,896.-32, in personalty, of which $114,218.32 was in cash or securities, and $678.00 in chattels. Of the cash and securities, $100,734.74 was turned over to the residuary legatees in kind and in a lump delivery prior to the filing of the account. The active administration was confined to assets amounting to $13,632.33. The executors charged 5% of the entire estate, $2,872.41 to each, and the attorney was allowed 3%, or $3,446.

The auditor sustained the charge; an appeal was had and the orphans' court in turn took the same action and now we are to pass upon the question. In overruling the exceptions to the items involving the commissions of the executors and the fees of the attorney, the court stated that the manner in which the executors acted under and through the advice of their counsel was very advantageous to those entitled to receive the funds. We fail to see any substantial proof of this.

The appraisement in the estate was made on the 18th of November and the account was filed on the 2nd of May following. The court takes notice of the fact that the assets of the estate were almost entirely distributed in kind, but takes occasion to remark that the decedent had approximately $7,000 in cash and about $900 worth of negotiable securities in a trunk in his home, that the executors took charge of this and placed the money on interest and also had the money transferred so that nearly all the available money bore interest continuously. All the executors did in this

connection was to put the cash in bank which involved little labor and allowed the money already in bank in a savings account to remain there, notice presumably being given that the depositor had died. The money in the savings account would have continued to bear interest, without any act of the executors. The death of the depositor does not stop the running of interest.

The attorney for the accountants went over the services performed by himself and the executors. He conducted the examination of the accountants and meticulously set out the most trivial circumstances in order to sustain the charges made even to the extent of going into details as to the apprehension of a holdup when they were carrying some of the money. Much of the services performed by the executors apparently consisted in the voluntary act of trying to effect a family settlement in which the respective parties were represented by a counsel and in which the executors had neither part nor lot. There were some worthless notes (at least they were not presently collectable) and the executors procured new notes payable to the heirs. The account filed shows that the money that actually was handled by the executors was in comparison to the size of the estate, trifling. The monies paid out for bills for the last illness and for settling the estate was $550.85 and then there was some money paid for masses for the repose of decedent's soul, and for telephone, fire insurance, and inheritance tax to the state. We, after a careful examination of the testimony of the case, can find no warrant for charges such as are made. The proportion of fees to the amount of the estate actually handled is too great. We think they are excessive: Com. v. T. & M. Bank, 268 Pa. 526; Semans v. Lumber Co., 281 Pa. 404; Wood's Estate, 272 Pa. 8.

The court following Moore's Estate, 228 Pa. 516, thought it would be a reversible error to disregard the

uncontradicted testimony of the two attorneys who testified to the fact that 5% would be a reasonable fee for the accountants and 3% for the attorney, "that the opinion of those familiar with such services is the best evidence of value," but in examining the testimony submitted by them, we can find nothing that would bind the court. The one attorney testified that these percentages are those charged in general practice, stating that he would have to study the estate before he could determine just what would be fair, that he knew the amount involved in the present estate and he did not think the fees charged were too large, although he knew nothing about the details. The other lawyer draws conclusions from his personal experience in settling estates and says that an accountant's 5% and the attorneys' 3% are reasonable in almost any case. When asked where all the assets were practically turned over in kind and no litigation was had, what in his judgment would be a reasonable fee for an attorney, he stated his conscience would not trouble him at all if he charged 3%. This would hardly be a proper proof as to what is reasonable. The testimony should not be as to the general value of services, but the value of the particular service rendered.

In the absence of any better expert proof as to what these services were worth, we cannot invoke the rule for which there is some authority that the orphans' court could not disregard the uncontradicted testimony of attorneys as to the value of such services (Moore's Estate, 228 Pa. 516), but in the present case their testimony had very little probative value. We are, therefore, constrained to hold that the court under its equitable powers could use its own judgment in the facts presented and decree what the fees should be. After all the compensation should be fixed by the work done, not by any arbitrary rule. Where an estate is distributed in kind, the compensation must not

necessarily be the same as where there is labor involved in the reduction of the assets to a distributable medium. The appellants are willing to concede 3% to the executors and 2% to the attorney and as we are all of the opinion that these sums are ample compensation for the labor performed, we will adopt them.

The decree of the orphans' court so far as the items involved in this appeal are concerned is reversed and the record is remitted that distribution may be had in accordance with this opinion. Costs to be paid out of the estate.