## Anderson Estate

*John Harper*, for accountant.

*Irving N. Kieff*, Deputy Attorney General, and *Arthur M. Cooper*, for Commonwealth.

BOLGER, J., August 13, 1951.—Kate Anderson died March 18, 1950, having first made a will, dated November 18, 1943, of which she appointed her nephew, Charles L. Yoder, executor, to whom letters testamentary were granted March 28, 1950.

Testatrix, after directing the payment of her just debts and funeral expenses, gave Knights of Pythias Cemetery Company the sum necessary to provide for perpetual care of the cemetery lots as specified in the second item of her will; devised to her nephew, Charles L. Yoder, all of the garages owned by her situate approximately 1949 East Willard Street, and also her home, 2009 East Cambria Street, Philadelphia. She then directed her executor to sell all of her other real estate and personal property and to pay over and distribute the proceeds thereof equally among Mrs. Maggie Morgan, Mrs. Nellie Yoder, Charles L. Yoder, Mrs. Mary Ella Tierney, Mrs. Nellie Stuart, Harry Waterhouse, Allie Waterhouse, Mrs. Ellen Sage, Rollie Waterhouse and Mrs. Margaret Sariti, absolutely.

Testatrix did not marry, nor were any children born to or adopted by her, after the execution of the will. She was survived by neither spouse nor issue. Maggie Morgan, sister and one of the residuary legatees as aforesaid, predeceased testatrix and left no issue, so that her share lapsed and thus increased the shares of the remaining nine residuary legatees.

Transfer inheritance tax was paid (prior to appraisement) in the sum of $600, less five percent discount of $30, or $570. Additional transfer inheritance tax is due, according to an appraisement and assessment of inheritance tax made by the register on January 19, 1951, with respect to which, however, a dispute arises as to the allowance of deductions for commissions to accountant at one and one-half percent on unconverted real estate which was specifically devised,

valued in the inventory and account at $6,000, or $90, and for premiums on fire insurance and public liability policies obtained by and issued to the accountant, totaling $40.82.

Credits for payment of the commissions and insurance premiums appear in the account. The account, as stated, blends the personal estate and real estate, both as to items of debit and credit, which conflicts with our present rules as amended. However, in fairness to counsel, it should be stated that the account was prepared and filed before the amendment which preserves and requires, as heretofore, the segregation of real estate from personal estate. No doubt counsel felt that, since the Fiduciaries Act of 1949 required a personal representative to include real estate in the inventory and appraisement and account therefor, our then existing rule of segregation of personalty from realty was inapplicable insofar as concerned an estate of a decedent who died on or after January 1, 1950, the effective date of the new Fiduciaries Act.

The following questions have been submitted for determination by the auditing judge, concerning the disputed items of deductions for inheritance tax purposes, as well as the rights of the specific devisee and residuary legatees:

1(a). Whether the accountant is entitled to commissions on unconverted real estate, specifically devised and not occupied by the devisee at time of death of testatrix;

(b). And, if so, whether such commissions or compensation, as allowed, should be borne by the estate generally or allocated as charges to the real estate specifically devised, and thus borne by the specific devisee.

2(a). Whether the cost for one year of public liability insurance with reference to real estate specifi-

cally devised is an administration expense and chargeable to decedent's estate generally; or

(b). An income expense allowable and chargeable simply to income from real estate and to be thus borne solely by the specific devisee.

3(a). Whether the cost for one year of fire insurance covering the real estate specifically devised is an administration expense and chargeable to decedent's estate generally; or

(b). An income expense allowable and chargeable simply to income from real estate and to be thus borne solely by the specific devisee.

Before discussing these questions, some observations giving rise to the controversies are deemed appropriate. It seems that, as a matter of policy, and especially in the absence of any court ruling, the register in the matter of appraisement and assessment of inheritance tax is disinclined to allow any deduction for commissions on unconverted real estate specifically devised. Apparently it is considered that there has been no such change in the law relating to the descent and devolution of real estate, notwithstanding the procedural aspects of the Fiduciaries Act of April 18, 1949, P. L. 512, which brings administration of real estate *fully* under the control of the personal representative, except that occupied by an heir or devisee, to warrant departure or deviation from the settled law that commissions are earned by a fiduciary strictly as compensation for the time and labor expended and the responsibility incurred, and that compensation may be arrived at as a matter of convenience by way of percentage; yet, after all, it is a question not of percentage but fair and just compensation, taking into consideration the character of the services rendered and the responsibility incurred.

It can hardly be doubted, of course, that real estate is still real estate and passes as such without any change in character. The Fiduciaries Act of April 18, 1949, P. L. 512, itself provides that the legal title passes, not to the personal representative as does personalty, but to the distributees under the intestate laws or the devisees under the will. This passing of the legal title, however, according to the Act of 1949, is expressly "subject to all the powers granted to the personal representative by this act and lawfully by the will and to all orders of the court": Section 104. But this, in many respects, is just what the law provided under the Fiduciaries Act of June 7, 1917, P. L. 447 (e.g., a fiduciary or even a creditor could petition the court for an order of sale of real estate to pay debts), except, of course, the new act confers a statutory power of sale as to real estate generally devised "except as . . . provided by the will, if any", but no such power as to real estate specifically devised: Section 541.

Admittedly, the legislature recognizes that there should be maintained the well-settled distinction between real property and personal property by reason of their different natures. Sections 103 and 104, as well as the respective comments thereto, clearly indicate that there has been no fundamental change in the law. In fact, the substantive law (Intestate Act of 1947) makes it clear that the heir takes the *whole* title as descends under the intestate laws subject to the payment of debts and charges, rather than title only to that *remaining* after the payment of debts. See section 1 and comments. It would seem that the personal estate is still the primary fund for payment of debts and that a personal representative cannot simply, for the sake of his own whim or desire, embark upon disposing of decedent's real estate in total disregard of the rights and interests of the heirs or devisees (see section 545 of Fiduciaries Act of 1949),

though he might well be under a duty to so convert personalty without consulting distributees or legatees, for distribution thereof in cash is the ordinary rule and not the exception: See Williams' Estate, 45 D. & C. 207. An heir or devisee may even enforce an early delivery of possession of real estate—something unheard of and utterly foreign as respects personalty: Section 735 of Fiduciaries Act of April 18, 1949. There is every and more reason why a judgment against a devisee or heir subsequent to the death of decedent should bind the real estate of such devisee or heir who has the *whole* title according to the substantive law (Wills Act of April 24, 1947, sec. 14(3) ; Intestate Act of 1947, sec. 1), as under the prior law: Acts of 1917. Pecuniary legacies in excess of $100 are still made charges or liens upon real estate not specifically devised when the personal estate is or becomes insufficient for their payment: Section 14(13) of the Wills Act of April 24, 1947, P. L. 89. And there are many more reasons, too numerous to mention, substantiating the fact that, though the procedural provisions of the Fiduciaries Act now afford administration and distribution of real estate by a personal representative, the inclusion of such real estate is not one of hotchpot in the estate of decedent so as to destroy its distinctive character and attendant distinction from personalty. In fact, there are more reasons and express provisions found in the 1949 Act itself which evidence that there has been fundamentally no change or wiping out of the distinctions, than there may be pointed to contrariwise. Admittedly section 751, pertaining to rights of legatees and distributees and order of abatement of legacies, does expressly lay down general rules "without distinction between real and personal estate". These may appear to upset the time-honored rule that the personal estate is the pri-

mary fund for payment of debts (see Risk's Appeal, 110 Pa. 171), yet such provisions alone, which concern primarily the rights of legatees and devisees as distinguished from heirs of a decedent who dies without a will, are insufficient in my judgment to conclude that there has been an abolishment of the distinction between real and personal property fundamentally or to any extent so as to warrant the statement that real estate is now administered and distributed exactly as personalty, which, in fact, in some cases it may not or, in others, need not necessarily be: Sections 501, 541, 543, 545, 611, 612, 615 and 756.

With the above observation, the questions presented will now be considered seriatim.

### Commissions on Unsold Real Estate

There is no disagreement as to the facts. It has been stipulated of record, inter alia, that the two parcels of real estate accounted for were specifically devised to the nephew (executor), and the residuary estate composed entirely of personalty, was left to 10 persons, one of whom predeceased testatrix; that neither parcel of real estate was occupied by the specific devisee at the time of death of testatrix, but that, shortly after her death, the specific devisee did occupy one of the parcels and "took possession" of the other; that the executor checked both the fire and liability insurances and ordered, and paid for out of the estate funds, additional policies for one year insuring the estate. The executor had the real estate appraised by two real estate brokers, and he inventoried, appraised and accounted for the real estate and personalty. He also submitted the required information to the inheritance tax authorities of personalty, realty and deductions on a form provided therefor by the Inheritance Tax Department. And, finally, the executor will, of

course, be required to distribute both personalty and realty.

When the Commonwealth first objected to the accountant's claim for commissions on unconverted real estate, it was on the basis that such real estate was specifically devised; that as a general "rule of thumb" allowance to fiduciaries of deductions for tax purposes, in the light of the new Fiduciaries Act of 1949, had been posed as follows:

1. No commissions where real estate is specifically devised and unsold.

2. Two percent commissions for handling real estate not specifically devised.

3. Three percent commissions for handling converted real estate or real estate ordered to be converted by will.

Counsel for the Commonwealth, however, in presenting the objections to the accountant's commissions, as a matter of deductions for tax purposes, at the audit (see Act of May 27, 1943, P. L. 757, 72 PS §2302), took the position that in this particular estate, considering a gross estate of some $9,100, of which $6,000 represented the specifically devised, unconverted real estate not occupied by the devisee, who is also the executor, and the balance of which, except for furniture valued at $50, consisted of cash, and considering the services, labor and responsibility assumed by the executor, an allowance of commissions of $156.31 (in reality the five percent commissions charged by accountant on personalty of $3,126.09) was ample compensation; moreover, that this allowance could be broken down to apply $126.31 thereof for responsibility, service and work in connection with personalty and claims, and $30 thereof for responsibility, service and work in connection with realty.

The auditing judge is constrained to reject the contention of counsel for the Commonwealth; first of all, because this estate is not necessarily large, nor is the cash which practically formed the entire personalty any great sum (cf. Ellis' Estate, 254 Pa. 402; Ott Estate, 103 Pa. Superior Ct. 55); secondly, the contention and argument avoid, in the main, the real issues which arise not only here but in countless other estates as are affected by the Fiduciaries Act of 1949.

It is true, of course, that commissions are earned strictly as compensation for the time and labor expended and the responsibility incurred, and that compensation may be arrived at as a matter of convenience by way of percentage, yet, after all, it is a question not of percentage but fair and just compensation, taking into consideration the character of the services rendered and the responsibility so incurred.

Prior to the Fiduciaries Act of April 18, 1949, a personal representative did not account for unconverted decedent-owned real estate. When he did account for the proceeds of sale, arising out of an exercise of a discretionary power or the carrying out of a direction contained in the will, or as the result of a sale authorized by the court under the provisions of the Fiduciaries Act of 1917 for the payment of debts, he was allowed, as a general rule, commissions at the rate of three percent on the proceeds of sale. Where, however, the proceeds were very small, so that a commission of three percent would not justly compensate the personal representative for the labor and responsibility incurred, a flat compensation, usually comparable to five percent, was not infrequently allowed: Kelly's Estate, 9 Dist. R. 387.

Certainly, under the new Fiduciaries Act of 1949, the powers, duties and responsibilities of personal representatives are enlarged. Real estate of a decedent

which is situate anywhere within the Commonwealth, is now to be included in the inventory and appraisement and accordingly accounted for. Of course, the duties and responsibilities may vary considerably, especially if the real estate (whether specifically devised, generally devised or simply descending under the intestate laws ) is occupied by the devisee or heir at the time of death of decedent: See section 501.

Therefore, to deny a personal representative any compensation simply because the real estate in question has been specifically devised (in which event there is no statutory power of sale) would be but an arbitrary action. Even if the real estate were occupied by the devisee at the time of death of decedent, there would still be some duties and responsibilities on the part of the personal representative, although, admittedly, they could hardly be the same as where the heir or devisee was not in possession and occupancy.

Where administration is raised and it need not necessarily be raised even under the new act, for real estate is still real estate (see section 104) there ought to be some general guide or "rule of thumb" covering the compensation of the personal representative as related to the services and responsibilities touching the real estate. Fundamentally, there is no good reason to ignore the general rules which have been in force and thus formulate complete and entirely different rules, classifying real estate in the exact category of personalty, for administration and other purposes, when, in fact, the new act itself does no such thing.

However, there is need for some modification of the previous general rule in regard to the compensation of the personal representative in connection with services rendered pertaining to real estate; otherwise, added duties and responsibilities under the new act would be unjust, if he were to receive no compensation except

where the real estate is converted; then the general rule itself of fair, just and reasonable compensation for the labor and responsibility incurred would go for naught.

In the instant case, though the real estate was all specifically devised to the accountant himself and though he did take possession and occupancy thereof shortly after the death of decedent, certain duties and responsibilities ensued when the accountant qualified as the personal representative. He was required to have it appraised and include it in his inventory and appraisement (sections 401 and 402) ; he has accounted for it, and he will be required to distribute it and duly record the award thereof, such recording to be at the expense of the estate: Section 736.

The auditing judge is of opinion and so rules, that the accountant is entitled to compensation in the sum of $60, as respects the real estate in question, which on a "rule of thumb" basis amounts to one percent of the inventory and appraised valuation of the real estate.

In passing, it might be noted that the register's practice of allowing a deduction from the gross estate of two percent commission of unsold real estate not specifically devised, would seem to be most generous and, if anything, should be qualified in situations where the real estate is in possession and occupancy of the heir or devisee at the time of death of decedent. The allowance of three percent commission for handling converted real estate or real estate ordered to be converted by will, in a measure accords with prior practice but this, too, is subject to revision if the conversion is mainly because of a desire of the parties to receive distribution in cash. Certainly where a specific devisee desires the conversion to be made, that sale is for his convenience and not that of the estate and,

though the accountant may be entitled to three percent commission on the proceeds of sale, that commission ought to be charged to and allocated to the proceeds of such sale, even if a one percent allowance is a deductible item from decedent's gross estate for tax purposes.

## Allowance of Compensation

Should the allowance of the compensation of $60 be borne by the specific devisee? It is contended and argued by counsel for the specific devisee that, since such devisee has a priority right in distribution, any expenses of administration such as commissions or compensation allowed to the accountant as respects such real estate, as distinguished, of course, from any carrying charges of such real estate subsequent to the death of decedent, must be borne by the estate of decedent generally, to the end that the devisee receives the real estate in distribution without any attendant costs or diminishment by such commissions or compensation. There is merit to this contention to the extent, however, that the compensation so allowed is very modest; first, because a specific legatee (whose rights, except in the cases of priority rights of a widow and issue, rise no higher than a specific devisee), does not have to bear the commissions upon specific legacies which are chargeable among the expenses of administration (McMenamin's Estate, 15 Phila. 510, and O'Brien's Estate, 23 Dist. R. 198); secondly, it is just and meet, since the deductible item for tax purposes (deductions being with respect to the gross estate under the taxing statute), of which the specific devisee gets no direct benefit as to the amount of tax due and owing by him as respects his devise, inures to the benefit of the residuary legatees, that such commission or compensation, being a charge among the expenses of administration, should be met from the estate gen-

erally and not the specific devisee; and, thirdly, section 736 of the Act of 1949, indicates that the cost of recording the award of the real estate is "at the expense of the estate". Cf. O'Brien's Estate, supra, requiring the specific legatee of stock to bear the cost of transfer of the stock.

## Public Liability Insurance

The Commonwealth concedes that the cost for one year of public liability insurance is a proper administration expense and deductible item for tax purposes. Section 503 of the Act of 1949 authorizes the personal representative, "at the expense of the estate", to obtain such insurance to protect himself, his employes and the beneficiaries from liability to third persons arising from the administration of the estate. In Reiff's Estate, 49 D. & C. 119, it was held that a fiduciary may properly carry public liability insurance upon real estate to protect himself and a trust estate and charge the premiums therefor against income, especially where the evidence is that the cost of insurance protecting the trust estate alone would exceed that of the type of insurance actually carried. And it was there recognized that, although the primary liability is that of the fiduciary and not of the estate, reimbursement out, of the estate is permitted in the conditions therein cited and that it is against this ultimate injury and depletion that the estate should be protected. Since section 503 of the Act of 1949 authorizes the personal representative to carry public liability insurance "at the expense of the estate", the auditing judge finds that the cost thereof for one year is a proper general administration expense, as distinguished from carrying charges or a recurring expense arising subsequent to death of decedent to be met ordinarily from real estate income, or borne by

the specific devisee himself or out of the proceeds of sale of the real estate. See Schott's Estate, 11 D. & C. 373.

### Fire Insurance

The cost of premiums for fire insurance is, however, in an entirely different category. It is strictly the duty of a trustee to obtain fire insurance upon the real estate of a trust, and he is entitled to credit therefor (McNickle v. Henry, 9 Phila. 243; Hurley's Estate, 13 Phila. 276; and see as regards a personal representative: Ketran's Estate, 24 Dist. R. 1087); but this is an expense chargeable to the income of the trust. Though it may be the duty of a personal representative, since he now may administer real estate, to carry fire insurance (see Ketran's Estate, supra); he certainly is entitled to credit for the cost thereof where he does obtain such insurance, but this insurance inures to, and is primarily for, the benefit of the heirs or devisees (most estates usually being solvent rather than insolvent) and, hence, is an income expense, not one of the items ordinarily chargeable among the administration expenses of estate of decedent. What was said by Judge Van Dusen in Schott's Estate, 11 D. & C. 373, at page 376, is apropos here: "This piece of property is set apart from the general estate on its own terms, and whether it is technically personal or real estate, it must take care of itself. The legatee gets the income from it, if any, segregated from the general income, and if there are expenses in taking care of it, other than the usual administration expenses, they must be borne by the trust *res*. If we were concerned, for example, with rare objects of art, which had to be insured and stored and repaired . . . , the expense of so doing would fall on the specific legatee. This position, as a thing apart is consistent with the superior rank of a specific legacy exempted from abatement with money legacies."

The auditing judge accordingly rules that the cost of fire insurance is not a deductible item in the matter of assessment of inheritance tax, nor is it an expense which should be saddled on the residuary legatees, but rather it is chargeable to the specific devisee and borne by him alone.

Accordingly, the balance shown by the account, $6,555.29 (as stated, this balance consists of real estate as therein shown appraised at $6,000, and the rest personalty), subject to distribution heretofore properly made; subject to modification in accordance with this adjudication as regards reduction of amount allowed for conpensation to accountant on unsold real estate specifically devised, and as regards the charging to the real estate of the fire insurance premium, and also the inheritance tax as relates to the specific devise, and subject to payment of such additional transfer inheritance tax as may be due the Commonwealth, is awarded as follows: Real estate, "garages at 1949 E. Willard Street and premises 2009 E. Cambria Street, Philadelphia", all specifically devised to Charles L. Yoder (nephew of decedent and the accountant), at their appraised valuations totaling $6,000, as indicated in the account, subject to the charge of cost of fire insurance which is allocated thereto and less tax at 10 percent on the appraised valuations of the real estate as fixed by the tax appraisers, to wit, $7,900, or $790, less discount of $30 (see Boekel's Estate, 16 Dist. R. 351), all of which will be refunded to the estate by the specific devisee as aforesaid, unto Charles L. Yoder, his heirs and assigns; to Knights of Pythias, $300, clear of tax, for perpetual care of cemetery lots; and the residue in equal ninth parts or shares, each; to Charles L. Yoder, Mrs. Nellie Yoder, Mary Ella Tierney, Nellie Stuart, Harry Waterhouse, Allie Waterhouse, Ellen Sage, Rollie Waterhouse, and Margaret Sariti.

Payment and distribution is so decreed.

Counsel for accountant will prepare a schedule of distribution, in duplicate, in which the real estate so awarded will be described by metes and bounds, together with a recital of how decedent acquired title, and counsel will duly certify this schedule to be correct and in conformity with this adjudication, and when and if the same is approved by the auditing judge, it will be annexed hereto and form part hereof.

And now, to wit, August 13, 1951, the account is confirmed nisi.